Patrick J. Mulkern (SBN 307272)
pmulkern@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, California 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys for Plaintiff
CROSSFIT, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSFIT, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TRAIN HD, LLC d/b/a "The Gorilla Strong" f/k/a "The Gorilla CrossFit," a Georgia limited liability company, and HORACE DAVIS, an individual,<br><br>Defendants. | CASE NO. '24CV0376 JO   BGS<br><br>**COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff CrossFit, LLC ("CrossFit"), by and through its undersigned counsel, hereby complains and alleges against Defendants Train HD, LLC d/b/a The Gorilla Strong f/k/a The Gorilla CrossFit ("Gorilla Strong") and Horace Davis ("Davis") (collectively, Gorilla Strong and Davis are referred to as "Defendants") as follows:

## Nature of the Action

1. This is an action for ongoing, willful trademark infringement by Defendants Gorilla Strong and Davis, stemming from Defendants' continued and unauthorized use of the CROSSFIT® marks following the termination of their Affiliate Agreement and Trainer Agreement.

## The Parties

2. Plaintiff CrossFit, LLC is a Delaware limited liability company with its principal place of business is located in Boulder, Colorado.

3. On information and belief, Defendant Train HD, LLC d/b/a The Gorilla Strong f/k/a The Gorilla CrossFit ("Gorilla Strong") is a Georgia limited liability company with its principal place of business located in Macon, Georgia. Specifically, Gorilla Strong's most recently-registered business address with the Georgia Secretary of State is 171 Spring Street, Macon, GA 31201.

4. On information and belief, Defendant Horace Davis ("Davis") is an individual who resides in or around Macon, GA. On information and belief, Davis owns (or owned) and operates (or operated) Gorilla Strong, and is Gorilla Strong's most recently-identified Registered Agent with the Georgia Secretary of State.

## Jurisdiction and Venue

5. This action arises under the trademark laws of the United States, *see* 15 U.S.C. § 1051 *et seq.*, and the laws of the State of California.

6. This Court has subject matter jurisdiction over CrossFit's Lanham Act claim, as a federal question, pursuant to 28 U.S.C. §§ 1331, 1338; and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Defendant Gorilla Strong because Davis has repeatedly agreed to this Court's jurisdiction on behalf of Gorilla Strong by virtue of the forum selection clause in the Affiliate Agreements discussed below.

8. This Court has personal jurisdiction over Defendant Davis because Davis has repeatedly agreed to this Court's jurisdiction by virtue of the forum selection clause in the Affiliate Agreements, as well as the forum selection clause in the Trainer Agreement, discussed below.

///
///

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because, at least, Defendants Gorilla Strong and Davis are subject to this court's personal jurisdiction with respect to this action.

### Plaintiff CrossFit's Intellectual Property Rights

10. CrossFit and its corporate predecessors have developed a revolutionary fitness training regimen that has become the principal strength and conditioning program for many police academies and tactical operations teams, military special operations units, champion martial artists, and millions of athletes worldwide.

11. The CROSSFIT® brand is of particular value in the competitive "small-box" fitness training industry, and so CrossFit is careful to cultivate, maintain, and protect the intellectual property rights that have enabled it to amass such considerable goodwill within its industry.

12. To that end, CrossFit diligently protects its intellectual property through trademark registrations. Indeed, CrossFit owns several federally-registered trademarks that contain the word "CROSSFIT"—including one registered more than 15-years ago—some examples of which are identified below:[1]

| U.S. Reg. No. | Mark |
| --- | --- |
| 3,007,458 | CROSSFIT |
| 4,049,689 | CROSSFIT |
| 4,053,443 | CROSSFIT |
| 4,895,992 | CROSSFIT |
| 5,045,737 | CROSSFIT |

///

///

---

[1] The various CROSSFIT marks specifically identified here in Paragraph 12 are collectively referred to as the "CROSSFIT® Marks."

13. These CROSSFIT® Marks have been in continuous use in commerce, since at least the dates of first use identified in the respective registrations to the present.

14. The federal trademark registrations for the CROSSFIT® Marks were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of CrossFit's exclusive ownership of the CROSSFIT® Marks.

15. In addition, CrossFit has accrued common law rights in the CROSSFIT mark for use in connection with goods and services not-yet-registered or not otherwise covered by its existing registrations.

16. Overall, these CROSSFIT® Marks are widely recognized around the world, and consumers readily and singularly associate the CROSSFIT® Marks and the CROSSFIT® brand with CrossFit's business and services.

17. Accordingly, CrossFit licenses the use of its intellectual property—including the CROSSFIT® Marks—only to affiliates that have received particularized training and certification from CrossFit.

18. Specifically, CrossFit provides a nationally-standardized certificate program to personal trainers who wish to become licensed CROSSFIT® affiliates. Individuals who successfully complete CrossFit's certificate program, and meet other requirements for affiliation, are eligible to enter into annually-renewable "affiliate license agreements" that permit limited use of the CROSSFIT® Marks (subject to various conditions).

19. Only individuals who have completed CrossFit's certificate process, and have entered into valid affiliate license agreements are permitted to use the CROSSFIT® Marks.

### Defendants' Relationship with CrossFit

20. In or around October 2015, Davis became an authorized CrossFit affiliate, ultimately electing to operate under the "The Gorilla CrossFit" name at 171 Spring Street, Macon, GA 31201.

21. On information and belief, the corporate entity identified as Train HD, LLC (continuously registered with the Georgia Secretary of State since at least as early as October 2016) is located at the same 171 Spring Street, Macon, GA 31201 address.

22. On information and belief, the entity Train HD, LLC previously operated under the "The Gorilla CrossFit" name.

23. For example, in or around November 2018, Davis signed an Affiliate Agreement with CrossFit, discussed in more detail below, electing to operate under the "The Gorilla CrossFit" name at 171 Spring Street, Macon, GA 31201.

24. As an additional example, Train HD, LLC was required to secure liability insurance coverage as part of its relationship with CrossFit and did so with at least one Certificate of Liability Insurance identifying Train HD, LLC as "DBA: Gorilla CrossFit" with the same 171 Spring Street, Macon, GA 31201 address.

25. On information and belief, the entity Train HD, LLC now operates under the "The Gorilla Strong" name.

A.   **Affiliate Agreements**

26. CrossFit's affiliates are required to execute Affiliate Agreements, which most often have one-year terms. During the course of Davis's relationship with CrossFit on behalf of Gorilla Strong, he executed at least three Affiliate Agreements—one on or around October 23, 2015, one on or around November 10, 2018, and one on or around one on or around November 10, 2019.

27. In Section 1.1(a) of each Affiliate Agreement Davis executed, he was granted a "limited, revocable, non-exclusive, non-transferable, non-assignable, non-delegable, and non-sublicenseable license to use the CrossFit name, trademarks, trade names, service marks, characters, or logos" in connection with the provision of CrossFit training at "The Gorilla CrossFit" in Macon, GA.

///

///

28. In Section 6(e) of each Affiliate Agreement Davis executed, Davis agreed that "[i]n the event of any termination or expiration of this Agreement, Affiliate [*i.e.* Davis and Gorilla Strong] shall discontinue immediately all use of the Licensed Marks." The section also concluded, expressly noting that "Section[] 6(e)…shall survive any expiration or termination of this Agreement."

**B.     Trainer Agreements**

29. In addition to the Affiliate Agreements, CrossFit trainers are required to execute Certificate License Agreements.

30. Davis first became a CrossFit Trainer in March 2017.

31. At various times since, Davis has executed such Certificate License Agreements—including the "CrossFit® Level 1 Trainer Certificate License Agreement" on or around March 25, 2017, and the "CrossFit® Level 2 Trainer Certificate License Agreement" on or around July 1, 2019.

32. In Section 1(c) of the Trainer Agreement Davis executed in March 2017, he agreed to "not use the CrossFit® trademark or any of CrossFit, LLC's other trademarks/service marks, taglines[], characters [], copyrighted content, or logos [] in any manner other than as expressly provided for in this Agreement."

33. Section 1(a) of that same Trainer Agreement only entitled Davis to "a limited, revocable, non-exclusive, non-transferable, non-assignable, and non-delegable license to use the CrossFit® trademark *solely* to identify himself [] as a 'CrossFit® Level 1 Trainer' or 'CrossFit® Level 1 Trainer Certificate Holder'" on a business card, biography, resume, CV, or other professional biography.

### Defendants' Infringement

34. On or around April 13, 2021, the Affiliate Agreement between CrossFit and Davis/Gorilla Strong was officially terminated. Despite the termination of the Affiliate Agreement, Gorilla Strong and Davis continued to use the CROSSFIT® Marks.

///

35. On or around June 4, 2021, a member of CrossFit's in-house legal team sent Davis an email regarding his need to remove CrossFit branding from Gorilla Strong's operations—identifying its website, social media pages, and other uses as requiring removal or change. CrossFit's in-house legal team followed up with Davis again in August 2021, June 2022, July 2023, and August 2023 regarding his improper use of the CROSSFIT® Marks.

36. On or around September 6, 2023, a member of CrossFit's outside counsel sent Davis a letter—with follow-up emails on September 25, October 12, and November 20, 2023, and January 31, 2024—regarding his need to remove CrossFit branding from Gorilla Strong's operations.

37. That September 6, 2023 communication again identified certain issues with Gorilla Strong's website and social media, as well as various in-person uses of the CROSSFIT® Marks, including external and internal signage at the gym. Those subsequent follow-up emails also specifically identified various in-person uses of the CROSSFIT® Marks, including external and internal signage at the gym.

38. Despite these repeated attempts by CrossFit to get Davis and Gorilla Strong to voluntarily cease-and-desist their infringing use of the CROSSFIT® Marks, Defendants continue to utilize them.

39. For example, at least as recent as December 24, 2023, Defendants were improperly advertising the infringing "The Gorilla Crossfit" name on a large sign outside their Macon, GA location as shown in the excerpt of a photograph reproduced below:

///
///
///
///
///

7
COMPLAINT



40. Additionally, as of October 9, 2023, Defendants were still improperly utilizing the CROSSFIT® Marks inside the gym, as shown on wall stenciling and on an internal poster reproduced below:




///

///

## Count I – Trademark Infringement (15 U.S.C. § 1114)

### (Against Defendants Gorilla Strong and Davis)

41. CrossFit repeats, re-alleges, and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

42. This claim is for trademark infringement under the laws of the United States, including Section 32 of the Lanham Act at 15 U.S.C. § 1114(1)(a).

43. Defendant Gorilla Strong and Defendant Davis have used, and continue to use, the CROSSFIT® Marks to advertise and sell their fitness training services in violation of CrossFit's rights in the registered trademarks.

44. Defendants' use of the CROSSFIT® Marks is likely to cause confusion, mistake, and to deceive consumers. This is especially true here because Defendants used to be a legitimately-licensed affiliate of CrossFit.

45. Defendants' actions constitute a blatant attempt to confuse the consuming public and to trade on CrossFit's goodwill—especially given Defendants have been repeatedly informed that they needed to stop using the CROSSFIT® Marks once the Affiliate Agreement had been terminated.

46. On information and belief, Defendants have acted knowingly and willfully, with full knowledge of the likelihood of confusion and with the intent to deceive consumers in order to trade on the efforts and goodwill/reputation of CrossFit.

47. By reason of the foregoing acts of infringement, CrossFit has been injured in an amount not yet ascertained, but to be proven at trial.

48. On information and belief, Defendants have also been unjustly enriched by virtue of their infringement—including their deception of consumers and misappropriation of CrossFit's goodwill.

49. As a result of Defendants' acts of infringement, CrossFit has suffered and will continue to suffer irreparable harm for which CrossFit has no adequate remedy at law—including damage to CrossFit's goodwill. Unless the Court

enjoins Defendants' acts of infringement, CrossFit will continue to suffer irreparable harm.

50. On information and belief, Defendants' actions have been knowing, intentional, wanton, and willful. The principles of equity warrant an award to CrossFit of treble damages and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

### Count II – Breach of Contract (Affiliate Agreement)
### (Against Defendant Davis)

51. CrossFit repeats, re-alleges, and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

52. On or around November 2018, Davis entered into an Affiliate Agreement with CrossFit.

53. CrossFit has performed under the Affiliate Agreement.

54. Davis has breached the Affiliate Agreement, however, by continuing to use, or allowing the continued use of, the CROSSFIT® Marks despite termination of the Affiliate Agreement.

55. By reason of Davis's breach of the Affiliate Agreement, CrossFit has been injured in an amount not yet ascertained, to be proven at trial.

### Count III – Breach of Contract (Trainer Agreement)
### (Against Defendant Davis)

56. CrossFit repeats, re-alleges, and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

57. On or around March 2017, Davis entered into a CrossFit® Level 1 Trainer Certificate License Agreement ("Trainer Agreement").

58. CrossFit has performed under the Trainer Agreement.

59. Davis has breached the Trainer Agreement, however, by continuing to use, or allowing the continued use of, the CROSSFIT® marks in connection with Davis's Gorilla Strong facility despite termination of the Affiliate Agreement.

60. By reason of Davis's breach of the Trainer Agreement, CrossFit has been injured in an amount not yet ascertained, to be proven at trial.

61. Pursuant to Section 4(b) of the Trainer Agreement, CrossFit is "entitled to recovery of its attorneys' fees and other costs of suit if CrossFit, LLC obtains a judgment in its favor" against Davis.

## Entitlement to Injunctive Relief

62. CrossFit repeats, re-alleges, and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

63. By reason of Defendants' acts of infringement as alleged herein, CrossFit has and will continue to suffer immeasurable—and thus irreparable—damage to its business, reputation, and goodwill.

64. Upon information and belief, Defendants intend to continue to engage in the acts of infringement complained of herein unless restrained and enjoined.

65. CrossFit's remedy at law is inadequate.

66. CrossFit is entitled to a preliminary and permanent injunction prohibiting Defendants and their affiliates, agents, employees, or anyone acting with their authority or on their behalf, from directly or indirectly utilizing any mark sufficiently similar to the CROSSFIT® Marks that is likely to cause confusion or mistake, or to deceive.

## Prayer for Relief

WHEREFORE, Plaintiff CrossFit, LLC prays for judgment as follows:

a. Judgment in CrossFit's favor on all claims herein;

b. Preliminary and permanent injunctions preventing Defendants Gorilla Strong and Davis from continued infringement of the CROSSFIT® Marks;

c. An accounting of profits and damages resulting from Defendants' trademark infringement, and the trebling of such damages because of the knowing, intentional, willful, and wanton nature of Defendants' conduct;

///

d. An award to CrossFit of (i) an amount equal to the actual damages suffered by CrossFit as a result of Defendants' infringing conduct; (ii) an amount equal to the profits earned by Defendants as a result of their infringement; (iii) an amount equal to three times the monetary award assessed in view of Defendants' willful and wanton infringement; (iv) prejudgment interest; and (v) an amount equal to CrossFit's reasonable attorney's fees as an "exceptional" case pursuant to 15 U.S.C. § 1117;

e. An award of actual damages for Defendant Davis's breach of the Affiliate Agreement;

f. An award of actual damages for Defendant Davis's breach of the Trainer Agreement;

g. An award of CrossFit's actual attorney's fees and costs of suit for Defendant Davis's breach of the Trainer Agreement;

h. An award of interests and costs; and

i. Such other and further relief as the Court may deem proper.

## Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff CrossFit, LLC hereby formally demands a trial by jury on all issues so triable.

DATED: February 26, 2024      Respectfully submitted,

GORDON REES SCULLY MANSUKHANI

By:   */s/ Patrick J. Mulkern*
Patrick J. Mulkern
Attorneys for Plaintiff
CROSSFIT, LLC